IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEUTSCHE BANK TRUST COMPANY AMERICAS, in its capacity as successor indenture trustee for certain series of Senior Notes, *et al.*,<br><br>   Plaintiffs,<br><br>v.<br><br>WELLS FARGO INVESTMENTS, LLC,<br><br>   Defendants. | C.A. No. 1:11-cv-006090-GMS |

**OPENING BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION TO STAY DEFENDANTS' TIME TO RESPOND TO THE
COMPLAINT IN THIS ACTION OR COMMENCE MOTIONS PRACTICE**

BERGER HARRIS, LLC

 /s/ *John G. Harris*
John G. Harris (DE #4017)
David B. Anthony (DE # 5452)
1201 N. Orange Street, Third Floor
Wilmington, DE 19801
Tel: (302) 655-1140
Fax: (302) 655-1131
jharris@bergerharris.com
danthony@bergerharris.com

*OF COUNSEL*:

KASOWITZ, BENSON, TORRES &
 FRIEDMAN LLP
David S. Rosner
Sheron Korpus
Christine A. Montenegro
Matthew B. Stein
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800

Dated: August 8, 2011
Wilmington, Delaware

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND .................................................................................................3

    A.    The Tribune Bankruptcy Proceeding and the Competing
           Plans of Reorganization ..............................................................................................3

    B.    The SLCFC Order and Commencement of Plaintiffs'
           50 State Law Actions ..................................................................................................4

ARGUMENT .........................................................................................................................6

    I.    The Litigation Over Tribune's Plan Confirmation Substantially Impacts This
        Action, And the SLCFC Order Requiring the Stay Should Be Given Due
        Deference ...................................................................................................................7

    II.    The Stay is Appropriate Given Plaintiffs' Forthcoming MDL Motion ....................7

           A.    The Stay Will Conserve Judicial Resources .................................................8

           B.    The Balance of Harms – Factors Two and Three – Favor Granting the
                  Requested Stay ..............................................................................................10

    III.    Plaintiffs Should Be Permitted Limited Carve-outs to the Stay ...........................11

    IV.    Alternatively, Should the Court Deny the Stay Motion, Plaintiffs Request That the
         Court Postpone the Filing of Any Answers or Other Pleadings Responsive to the
         Complaint Until Such Time as the Parties Have Convened for a Case
         Management Conference and the Court Enters a Case Management Order .........13

CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Arthur-Magna, Inc. v. Del-Val Fin. Corp.*,
    1991 WL 13725 (D.N.J. 1991) ......................................................................... 8, 10

*Azar v. Merck & Co., Inc.*,
    2006 WL 3086943 (N.D. Ind. Oct. 27, 2006) ........................................................ 9

*Cigna Healthcare of St. Louis, Inc. v. Kaiser*,
    294 F.3d 849 (7th Cir. 2002) ................................................................................ 7

*Egon v. Del-Val Fin. Corp.*,
    1991 WL 13726 (D.N.J. Feb. 1, 1991) ................................................................ 10

*Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*,
    2010 WL 2573925 (D. Del. June 25, 2010) .......................................................... 8

*Gold v. Johns Manville Sales Corp.*,
    723 F.2d 1068 (3d Cir. 1983) ............................................................................... 6

*In re Lehman Brothers Holdings, Inc., Secs. & Employee Retirement Income Sec. Act
(ERISA) Litig.*, 598 F. Supp. 2d 1362 (J.P.M.L. 2009) ............................................ 9

*In re Mid-Atl. Handling Sys., LLC*,
    304 B.R. 111 (Bankr. D. Del. 2003) ..................................................................... 8

*In re NorthStar Educ. Fin. Inc.*,
    588 F. Supp. 2d 1370 (J.P.M.L. 2008) ................................................................. 9

*In re Tribune Co.*,
    No. 08-13141 (KJC) (Del. Bankr.) ........................................................................ 3

*In re U.S. Fin. Secs. Litig.*,
    375 F. Supp. 1403 (J.P.M.L. 1974) ...................................................................... 9

*JDL Ventures, LLC v. Dave & Buster's, Inc.*,
    2004 WL 2203737 (E.D. Pa. Sept. 27, 2004) ..................................................... 11

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ............................................................................................. 6

*Official Committee of Unsecured Creditors of Tribune Co. v. FitzSimmons*,
    Adv. Pro. No. 10-54010 (KJC) (Del. Bankr.) ....................................................... 3

# TABLE OF AUTHORITIES
(continued)

**Cases**                                                                                         **Page(s)**

*Packer v. Power Balance, LLC,*
    2011 WL 1099001 (D.N.J. Mar. 22, 2011) ......................................................... 8, 9, 10

*St. Joe Co. v. Transocean Offshore Deepwater Drilling Inc.,*
    -- F. Supp. 2d --, 2011 WL 915300 (D. Del. Mar. 15, 2011) ................................. 8, 9

*Texaco, Inc. v. Borda,*
    383 F.2d 607 (3d Cir. 1967) .................................................................................... 6

*Vehicle IP, LLC v. Wal-Mart Stores, Inc.,*
    2010 WL 4823393 (D. Del. Nov. 22, 2010) ............................................................ 10


## Rules

Fed. Civ. P. 26(d)(1) ........................................................................................... *passim*

Fed. Civ. P. 26(f) ....................................................................................................... 12

Fed. Civ. P. 21 .................................................................................................... *passim*

Fed. Civ. P. 41 .................................................................................................... *passim*

As directed by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in an order dated April 25, 2011 ("SLCFC Order"), Plaintiffs Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for a certain series of Senior Notes ("DBTCA"), Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for a certain series of Senior Notes ("Law Debenture"), and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes ("Wilmington Trust" and, together with DBTCA and Law Debenture, "Plaintiffs"), hereby request that the Court stay the time for Defendants to respond to the Complaint or commence motion practice in this action (the "Stay") until further order by the Bankruptcy Court in the Tribune Company's ("Tribune") chapter 11 proceedings (the "Bankruptcy Proceeding") (Case No. 08-13141 (KJC)), or further Order of this Court.

## INTRODUCTION

This litigation arises from the failed leveraged buyout of Tribune in 2007 (the "LBO"). Financial and industry analysts at the time described this transaction as one of the most highly leveraged and ill-advised in history. (Compl. ¶ 1.) Despite Tribune's declining business, pursuant to the LBO, Tribune paid its former shareholders over $8 billion in cash at the expense of Tribune's existing creditors, and precipitated the company's descent into bankruptcy shortly thereafter. *Id.* In this action, Plaintiffs assert claims that seek to avoid and recover, as constructively fraudulent conveyances, all transfers of proceeds received by each defendant in connection with the LBO (and together with the state-law constructive fraudulent conveyance cases brought by Plaintiffs in 21 other states, the "Creditor SLCFC Claims"). (Compl. ¶ 2.)

The Honorable Kevin J. Carey, Chief Judge of the United States Bankruptcy Court for the District of Delaware, has presided over the Tribune Bankruptcy Proceeding since the Debtors'

1

chapter 11 filings in 2008. On April 25, 2011, Chief Judge Carey issued an order providing that neither sections 362(a) nor 546(a) of the Bankruptcy Code bar Plaintiffs from *filing* state law constructive fraudulent conveyance claims against former Tribune shareholders. (*See* SLCFC Order ¶¶ 2, 3, attached as Exhibit C to the Declaration of Christine A. Montenegro in Support of Plaintiffs' Motion to Stay ("Montenegro Decl.").) While Judge Carey's order authorized the Plaintiffs to file their state law constructive fraudulent conveyance claims, Judge Carey also ordered that any such claims be stayed in order for the Bankruptcy Court to address certain objections by parties in interest challenging proposed plans of reorganization. (*See* Montenegro Decl. Ex. C ¶ 6; *see also infra* Factual Background, Part B.)

Plaintiffs bring this motion in order to comply with the SLCFC Order, which is binding on them. In addition, Plaintiffs seek a Stay for the independent reasons that a Stay will allow sufficient time (a) for the Bankruptcy Court to confirm a plan of reorganization, which plan may impact Plaintiffs' claims here; and (b) for the Plaintiffs to file a motion requesting that the Judicial Panel on Multidistrict Litigation (the "MDL Panel") transfer and consolidate this action along with the other similar Creditor SLCFC Claims that Plaintiffs have filed in federal courts across the country. Thus, the Stay will benefit all the parties in interest to this action as well as the Court.

The requested Stay, which will obviate the need for Defendants to answer or otherwise respond to the complaint (or engage in any substantive litigation of the merits), contains two primary carve-outs. First, Plaintiffs request that the Stay permit them to take limited discovery (subject to first receiving an order of the Court) that may be necessary solely for the purpose of preventing applicable statutes of limitation or other time-related defenses from barring any state law constructive fraudulent conveyance claims against any former Tribune shareholder to

2

{00543734;v2}

recover stock redemption/purchase payments made to such shareholders in connection with the 2007 Tribune LBO – something the SLCFC Order specifically contemplates. (Montenegro Decl. Ex. C ¶ 6.) Second, Plaintiffs request that the Court's Stay order require the Defendants or their counsel to enter an appearance in the action, so that their identities will be known and they can readily be served with any further notices, orders, or other pleadings in the case. Additional carve-outs include a request that Plaintiffs be allowed to (i) amend the Complaint or file a motion for leave to amend the Complaint; (ii) voluntarily dismiss this action or one or more Defendants pursuant to Federal Rule of Civil Procedure 41; (iii) move to add or drop a party or to sever any claim against a party pursuant to Federal Rule of Civil Procedure 21; and (iv) file their MDL Motion.

## FACTUAL BACKGROUND

*A. The Tribune Bankruptcy Proceeding and the Competing Plans of Reorganization*

In 2008, the Tribune and many of its operating subsidiaries (collectively the "Debtors") jointly filed for bankruptcy. (Compl. ¶¶ 12, 13.) Upon the December 8, 2008 petition date, Bankruptcy Code section 546(a) afforded the Debtors' estates a two-year period in which they had the exclusive right to commence state law fraudulent conveyance claims.

On November 1, 2010, on behalf of the Debtors' estates, the Official Committee of Unsecured Creditors (the "Committee") initiated an adversary proceeding against, *inter alia*, all of Tribune's shareholders who received proceeds from the LBO, including Defendants in this instant action, alleging that the LBO was an *intentional* fraudulent conveyance (the "Committee Action") (*In re Tribune Co.*, No. 08-13141 (KJC) (Del. Bankr.); *Official Committee of Unsecured Creditors of Tribune Co. v. FitzSimmons*, Adv. Pro. No. 10-54010 (KJC) (Del. Bankr.)). The Committee Action does not, however, include state law *constructive* fraudulent conveyance

claims against the Tribune's shareholders to recover Shareholder Transfers. Because the statutory period during which the Debtors had exclusive standing to bring state law constructive fraudulent conveyance claims expired on December 8, 2010 (two years after the petition date), the Plaintiffs, and other Creditors, regained their ability to commence such actions (*e.g.*, the instant case) on their own behalf. (Montenegro Decl. ¶ 3.)

On February 4, 2011, the Debtors, the Committee, and certain lender parties in interest filed their Second Amended Joint Plan of Reorganization for the Debtors (the "DCL Plan"). (*Id.* ¶ 4.) On February 25, 2011, the largest noteholder of the Debtors, and Plaintiffs herein, jointly filed a competing plan of reorganization (the "Noteholder Plan" and together with the DCL Plan, the "Competing Plans"). (*Id.* ¶ 4.) The Competing Plans, objected to by certain parties, included a mechanism by which state law constructive fraudulent conveyance claims, such as those asserted in this action, could be transferred to and litigated by a Creditors' Trust, and proceeds from such actions would flow to beneficiaries according to terms of the Competing Plans. (*Id.* ¶¶ 5, 6.) The Robert R. McCormick Tribune Foundation and the Cantigny Foundation (together, the "Plan Opponents") objected to both the Competing Plans because, among other things, they contend that Bankruptcy Code section 546(e) bars state law causes of action to recover payments to stockholders in exchange for the transfer of securities. (*Id.* ¶¶ 6, 7.)

The Bankruptcy Court held a two-plus week evidentiary trial on the Competing Plans of reorganization, and closing argument occurred on June 27, 2011. (*Id.* ¶ 8.) The Bankruptcy Court has reserved decision.

B.  *The SLCFC Order and Commencement of Plaintiffs' 50 State Law Actions.*

Assuming *arguendo* that Plaintiffs' Creditor SLCFC Claims are subject to a four-year statute-of-limitations period applicable in certain states, the time for filing suit against certain

4

defendants arguably would have expired on or shortly after June 4, 2011. On March 1, 2011, to prevent state law causes of action from arguably becoming time-barred while the litigation over the Competing Plans continued, Plaintiffs moved the Bankruptcy Court for an order (i) determining that eligible creditors had regained the right to prosecute the Creditor SLCFC Claims; (ii) determining that the automatic stay did not bar commencement of the Creditor SLCFC Claims by Plaintiffs; and (iii) granting leave from a mediation order by the Bankruptcy Court to permit commencement of the Creditor SLCFC Claims (the "Standing Motion," attached as Exhibit A to Montenegro Decl.). On April 25, 2011, the Bankruptcy Court granted the Standing Motion and issued the SLCFC Order permitting Plaintiffs to (a) commence state law constructive fraudulent conveyance litigation, and (b) pursue discovery as necessary to prevent any applicable statute of limitations or time-related defenses from barring Plaintiffs' claims, provided that (c) Plaintiffs filed an application for a stay after the litigation commenced. (*See* Montenegro Decl. Ex. C ¶¶ 2-4, 6.)

That the Bankruptcy Court wanted this lawsuit stayed after it was filed is made clear not only by the SLCFC Order itself, but also by Judge Carey's remarks at the hearing on the Standing Motion. Judge Carey stated:

> I would be willing to say, to the extent the [Bankruptcy Code section 362 automatic] stay does apply, it's lifted, solely to permit the commencement of such [state law] litigation. But I would like the memorialization, until further order of the Court . . . that no litigation should be pursued or prosecuted, because I am concerned about whether there would be implications with respect to any decision I might make in connection with confirmation of a plan, and I want to reserve, to myself and to the parties who have objected to confirmation, to make whatever arguments they have to make without being hampered by an order that I'm entering here. I don't mean to dispose of any of those rights.

(Tr. of Proceedings, March 22, 2011 at pp. 100-01, relevant portion attached as Exhibit B to Montenegro Decl. (emphasis added).)

5

On June 3, 2011, Plaintiffs commenced this action in the Superior Court of Delaware, New Castle County and are in the process of serving Defendants with the Complaint. Plaintiffs also filed 49 substantially similar complaints, commencing suits in 21 other states (together with this action, the "SLCFC Actions"). (Montenegro Decl. ¶ 13.) All of the SLCFC Actions were filed in federal district courts, with the exception of this case and nine other cases filed in New York, Delaware and California state court. *Id.* The lawsuits in the other states, like here, include constructive fraudulent conveyance claims against named defendants as well as, in some actions, class claims against a defendants' class. *Id.*

On July 19, 2011, certain Defendants removed this action to this Court.[1] Plaintiffs now seek a stay of the action.

## ARGUMENT

The Court should give deference to the Bankruptcy Court's SLCFC Order and temporarily stay this lawsuit. Moreover, and perhaps in any event, the Court should exercise its discretion and stay this matter in order to allow: (a) time for the Tribune Bankruptcy Proceeding over plan confirmation to conclude; and (b) time for Plaintiffs' forthcoming MDL motion to be fully adjudicated.

It is well established that a court's "'power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Texaco, Inc. v. Borda*, 383 F.2d 607, 608 (3d Cir. 1967) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *accord Gold v. Johns Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983) ("The power to stay proceedings

---

[1] In their notice of removal, these defendants set forth various allegations and bases in support of removal of this matter. Plaintiffs dispute several of these allegations and bases, but do not contest that federal subject matter jurisdiction exists.

is incidental to the power inherent in every court to schedule disposition of the cases on its docket so as to promote fair and efficient adjudication" as to which district courts have "wide discretion."). Here, the Stay is appropriate and should therefore be granted.

I. **THE LITIGATION OVER TRIBUNE'S PLAN CONFIRMATION SUBSTANTIALLY IMPACTS THIS ACTION, AND THE SLCFC ORDER REQUIRING THE STAY SHOULD BE GIVEN DUE DEFERENCE.**

Courts recognize that a stay is appropriate where, as here, another pending matter could have a substantial impact on that litigation. *See Cigna Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851 (7th Cir. 2002) ("A federal court is authorized to stay proceedings in a lawsuit before it because parallel proceedings are pending in another court, either federal or state"). The connection between the Bankruptcy Court's pending determination of the Plan Opponents' objection, and the Creditor SLCFC Claims asserted here, justifies the Stay.

Indeed, the potential for Plan litigation to impact Plaintiffs' ability to successfully prosecute the Creditor SLCFC Claims was what caused Judge Carey to require a stay as part of his order permitting Plaintiffs to file these lawsuits. As the Court expressly ordered:

> [A State Shareholder Avoidance Action] commenced by the filing of any complaint . . . shall automatically be stayed in the applicable state court(s) where such complaint(s) are filed, or if not automatic in such state court(s), then application for the stay in accordance with the provisions of this Order shall be made by the [] Plaintiff Group or any other creditor that files its own complaint . . . .

(*See* Montenegro Decl. Ex. C ¶ 6.) Plaintiffs respectfully request that this Court defer to Chief Judge Carey's SLCFC Order and stay this action until further Order of the Bankruptcy Court or this Court that affects the Stay.

II. **THE STAY IS APPROPRIATE GIVEN PLAINTIFFS' FORTHCOMING MDL MOTION.**

The Court should also grant a stay for the independent reason that it would allow for the adjudication of Plaintiffs' forthcoming MDL motion. Federal courts routinely determine that it is

7

appropriate to stay preliminary pretrial proceedings while a motion to transfer is pending before the MDL Panel. *Packer v. Power Balance, LLC*, 2011 WL 1099001, at *1 (D.N.J. Mar. 22, 2011) (citing 15 Wright & Miller, Fed. Prac. & Proc. § 3866.1 ("[D]istrict courts will often exercise their discretionary power to stay the proceedings before them with regard to a wide variety of matters pending a decision by the panel regarding the transfer of a case, especially when such a stay would further the policies of judicial economy, efficiency, and consistency that are deeply embedded in the federal multidistrict litigation statute.")); *Arthur-Magna, Inc. v. Del-Val Fin. Corp.*, 1991 WL 13725, at *1 (D.N.J. 1991) (granting defendants' motion to "temporarily stay all litigation pending resolution by the Judicial Panel on Multidistrict Litigation" of defendants' transfer motion). A court considers three factors in determining whether to grant a stay to allow time to decide whether to transfer a case to an MDL: (1) "the potential prejudice to the non-moving party"; (2) "any hardship and inequity to the moving party in the absence of a stay"; and (3) "judicial economy." *St. Joe Co. v. Transocean Offshore Deepwater Drilling Inc.*, -- F. Supp. 2d --, 2011 WL 915300, at *3 (D. Del. Mar. 15, 2011) (citing *Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, 2010 WL 2573925, at *3 (D. Del. June 25, 2010)). Here, all of these factors favor issuance of the Stay.

*The Stay Will Conserve Judicial Resources.*

Almost by definition, entry of a stay will conserve judicial resources because it will avoid the otherwise inevitable pre-consolidation proceedings that will be rendered duplicative and inefficient in the likely event that Plaintiffs' MDL motion is granted. Courts have repeatedly found that judicial economy weighs in favor of a stay where, as here, the court is likely to transfer the case in the near future. *See, e.g., In re Mid-Atl. Handling Sys., LLC*, 304 B.R. 111 (Bankr. D. Del. 2003) (judicial economy suggested that the bankruptcy court should not

8

{00543734;v2}

"familiarize itself with the voluminous record and pending motions presently before the state court"); *Azar v. Merck & Co., Inc.*, 2006 WL 3086943, at *1 (N.D. Ind. Oct. 27, 2006) ("[T]he resources of this Court will not be well spent familiarizing itself with a case that it will likely lose jurisdiction over in the near future."); *cf. St. Joe*, 2011 WL 915300, at *3 (denying a stay where the motion to transfer was likely to be denied).

Moreover, Plaintiffs' MDL motion is likely to be granted because, as the MDL Panel has recognized, consolidation is called for when "the prevalence of common factual issues and similar class allegations . . . [prevents] duplication of discovery and eliminate[s] the possibility of inconsistent or overlapping class determinations." *In re U.S. Fin. Secs. Litig.*, 375 F. Supp. 1403, 1404 (J.P.M.L. 1974) (per curiam); *see also In re Lehman Brothers Holdings, Inc., Secs. & Employee Retirement Income Sec. Act (ERISA) Litig.*, 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009) (transfer of seventeen actions pending in five districts warranted when the actions were "expected to focus on a significant number of common events, defendants, and/or witnesses," that is, whether the "defendants allegedly made materially false and/or misleading statements which had a negative impact on [the] securities").

Plaintiffs' MDL motion is also likely to be granted because, without centralization, there is a significant risk of conflicting decisions. *See, e.g., In re NorthStar Educ. Fin. Inc.*, 588 F. Supp. 2d 1370 (J.P.M.L. 2008) (centralizing actions to prevent inconsistent pretrial rulings); *Packer*, 2011 WL 1099001, at *2 ("It would be a waste of judicial resources for this Court to consider the merits of Plaintiff's Complaint at the same time that . . . the [Judicial Panel on Multidistrict Litigation] is considering whether transfer is appropriate.").

Here, absent centralization there will be nearly 40 actions proceeding in numerous federal district courts involving identical factual allegations and claims, and encompassing individual

defendants and putative classes of similarly situated parties across the country, all of whom cashed out their Tribune stock, or otherwise received proceeds, in connection with a single LBO. Moreover, without centralization, there would be a strong likelihood of inconsistent results, as the various district and state courts where these suits are pending could easily decide identical issues differently. Thus, this first factor — conservation of judicial resources — strongly favors the issuance of a Stay.

*The Balance of Harms — Factors Two and Three — Favor Granting the Requested Stay.*

The balance of the harms (*i.e.*, potential prejudice to the Plaintiffs and the Defendants) also favors a stay. As courts have recognized, the failure to stay one of multiple actions pending determination of an MDL Motion imposes unnecessary burden and hardship on the party required to litigate in multiple forums. *See Egon v. Del-Val Fin. Corp.*, 1991 WL 13726, at *1 (D.N.J. Feb. 1, 1991); *Arthur-Magna*, 1991 WL 13725, at *1 (staying its participation in multidistrict litigation because "if separate discovery were to go forward, much work would be duplicated"). These same considerations compel a stay here. It would impose substantial hardship on Plaintiffs to litigate motions to dismiss, motions for class certification, and other pretrial motions in nearly 20 jurisdictions. Moreover, as discussed above, the risk of conflicting rulings on these issues could be prejudicial to Plaintiffs.

In contrast, Defendants will not be prejudiced if this Court enters the requested Stay because the Stay will result in all of the parties — Plaintiffs and Defendants — conserving their resources. Assuming this Court would grant a stay, Plaintiffs will provide periodic status reports on the Bankruptcy Proceedings and MDL process to this Court. Courts have granted stays in similar situations. *See Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, 2010 WL 4823393, at *3 (D. Del. Nov. 22, 2010) (granting defendants' motion to stay, but requiring the parties to file a status report seven months after the court's order); *see also Packer*, 2011 WL 1099001, at *2 (granting

{00543734;v2}

a stay, but noting that "the stay [would] not be indefinite," and requiring the defendant to "file status reports with this Court providing updates on the California class action litigation and the MDL proceedings"); *JDL Ventures, LLC v. Dave & Buster's, Inc.*, 2004 WL 2203737, at *1 (E.D. Pa. Sept. 27, 2004) (granting defendant's motion to stay and ordering periodic status reports regarding ongoing litigation in a Texas state court so as to avoid a "piecemeal consideration of what [was] really a unitary set of disputes").

Thus, the second and third factors — prejudice to Plaintiffs if the Stay is not granted and prejudice to Defendants if the Stay is granted — also strongly favor the issuance of the Stay.

### III. PLAINTIFFS SHOULD BE PERMITTED LIMITED CARVE-OUTS TO THE STAY.

Plaintiffs seek limited carve-outs to the Stay, of which two merit particular discussion. First, Plaintiffs seek permission to file a Rule 26(d)(1) motion seeking leave of the Court to conduct preconference discovery that may be necessary solely for the purpose of preventing applicable statutes of limitation or other time-related defenses from barring any state law constructive fraudulent conveyance claims against any former Tribune shareholder to recover stock redemption/purchase payments made to such shareholders in connection with the 2007 Tribune LBO. While Plaintiffs utilized the best information available regarding the shareholder parties to the LBO in order to initiate this action, toll any applicable statute of limitations, and effectuate service, further discovery may be required at the outset of this case.

As discussed above, on April 25, 2011, Plaintiffs received leave of the Bankruptcy Court to assert the Creditor SLCFC Claims and confirmation that initiating this action would not violate the automatic stay provisions under Bankruptcy Code section 362(a). (Montenegro Decl. Ex. C ¶ 3.) On April 29, 2011, Plaintiffs subpoenaed the Committee to obtain access to information regarding the identities of the shareholders or other entities that received cash

transfers pursuant to the LBO, their locations, and the amount of the cash transfers the shareholders received. (Montenegro Decl. ¶ 12.) The Committee had previously collected this information by issuing over 1,600 subpoenas in November 2010 to more than 900 separate entities.[2] (*Id.*) Plaintiffs received this voluminous amount of data from the Committee approximately eight days before they filed this lawsuit.

Because the Committee provided the requisite information approximately one week before Plaintiffs filed the instant Complaint, and Plaintiffs understand that the Committee is still receiving new and updated information regarding the identities of these shareholders, Plaintiffs may require the opportunity to conduct limited discovery of Defendants and third-parties. (*Id.*) Such discovery should be permitted during the requested Stay and is appropriate under Rule 26(d)(1), as it addresses threshold matters such as jurisdiction and proper service of process, and is not burdensome in scope. *See* Fed. R. Civ. Pro. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order").

Indeed, the SLCFC Order expressly contemplated that Plaintiffs would engage in such discovery during the pendency of the Stay, and Plaintiffs ask the Court to afford this aspect of the SLCFC Order due deference as well. (Montenegro Decl. Ex. C ¶ 6.) Therefore, for the reasons stated above and in accord with Judge Carey's Order, Plaintiffs request that the Court grant the Stay, but expressly carve out from the Stay permission for Plaintiffs to file a Rule 26(d)(1) motion seeking leave of the Court to conduct early discovery limited to the topics that will be set forth in Plaintiffs' forthcoming Rule 26(d)(1) motion, as well as permit Plaintiffs, if necessary, to

---

[2] The Committee's data regarding the identities of the shareholders, their location, and the quantum of cash transferred to each shareholder was subject to confidentiality agreements the Committee entered into with certain shareholder parties, as well as the Protective Order entered by the Bankruptcy Court on May 19, 2011. (Compl. ¶ 23.)

12

amend the Complaint pursuant to Rule 15 once it completes this limited discovery so that it can drop or reassign defendants from one action to another as governed by Rules 21 and 41, if so required.

Second, Plaintiffs seek a carve-out to the Stay requiring Defendants to enter an appearance in the case. Requiring all of the Defendants to enter an appearance would assist with this Court's case management and ensure that each Defendant was properly served with any further notices, orders, or pleadings in this action.

IV. **ALTERNATIVELY, SHOULD THE COURT DENY THE STAY MOTION, PLAINTIFFS REQUEST THAT THE COURT POSTPONE THE FILING OF ANY ANSWERS OR OTHER PLEADINGS RESPONSIVE TO THE COMPLAINT UNTIL SUCH TIME AS THE PARTIES HAVE CONVENED FOR A CASE MANAGEMENT CONFERENCE AND THE COURT ENTERS A CASE MANAGEMENT ORDER.**

In the alternative, if the Court denies Plaintiffs' request for the Stay, Plaintiffs request that the Court postpone the filing of any answers or dispositive motions by Defendants until such time that a case management conference can be convened and an order granting a case management schedule is entered. In light of the complexity of the action, the number of individually named defendants, and the class action component to the case, it would be in the best interests of the Court and the parties for briefing on dispositive motions and any other motions practice to be conducted pursuant to an orderly case management schedule entered by this Court, as opposed to potential, multiple motions being litigated piecemeal and without coordination.

## CONCLUSION

For each of the foregoing reasons, Plaintiffs respectfully request that the Court:

(i) grant Plaintiffs' amended motion for a Stay of Defendants' time to respond to the Complaint in this action or commence motions practice until further order by the Bankruptcy Court in the Bankruptcy Proceedings or further order of this Court;

(ii) order that the Stay does not bar, but instead permits, (a) Plaintiffs to amend the Complaint or file a motion for leave to amend the Complaint; (b) Plaintiffs to voluntarily dismiss this action or one or more defendants pursuant to Federal Rule of Civil Procedure 41; (c) Plaintiffs to move to add or drop a party or to sever any claim against a party pursuant to Federal Rule of Civil Procedure 21; (d) Plaintiffs to file their MDL Motion; and (e) Plaintiffs to file a Rule 26(d)(1) motion seeking leave of the Court to conduct early discovery limited to that which may be necessary solely for the purpose of preventing applicable statutes of limitation or other time-related defenses from barring any state law constructive fraudulent conveyance claims against any former Tribune shareholder to recover stock redemption/purchase payments made to such shareholders in connection with the 2007 Tribune LBO; and

(iii) require each Defendant to enter an appearance in the action so that they or their counsel are known, in order to better facilitate service of further notices, orders, or pleadings upon them in the action.

In the alternative, in the event that the Court denies Plaintiffs' requested Stay, Plaintiffs respectfully request that the Court convene a case management conference and require the entry of a case management order, which provides, among other things, a briefing schedule for the litigation, prior to any Defendant being permitted to answer the Complaint or file an otherwise responsive pleading.

15

                    BERGER HARRIS, LLC

                    */s/ John G. Harris*
                    John G. Harris (DE #4017)
                    David B. Anthony (DE # 5452)
                    1201 N. Orange Street, Third Floor
                    Wilmington, DE 19801
                    Tel: (302) 655-1140
                    Fax: (302) 655-1131
                    jharris@bergerharris.com
                    danthony@bergerharris.com

                    *Attorneys for Plaintiffs*

*OF COUNSEL*:

KASOWITZ, BENSON, TORRES &
   FRIEDMAN LLP
David S. Rosner
Sheron Korpus
Christine A. Montenegro
Matthew B. Stein
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800


Wilmington, Delaware
Dated: August 8, 2011